## VILLAGE OF KENNEDY v. AMELIA MARIA SORENSON.

88 N. W. (2d) 89.

February 7, 1958—No. 37,263.

 

*Harry H. Peterson,* for appellant.
*Lyman A. Brink,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from the final certificate and an order approving said certificate filed in eminent domain proceedings commenced by the village of Kennedy.

On October 1, 1956, the council of the village of Kennedy adopted a resolution to lay out and open a "public way and path for pedestrians" across the land of appellant, hereinafter referred to as the landowner. The land was described in the resolution as a strip 15 feet wide and approximately 180 feet long. When the petition of the village was presented to the district court to take the land by eminent domain, the landowner filed her answer alleging that the petitioner is without legal power or authority to take or condemn the land described in the petition either pursuant to the proceedings or otherwise. On November 13, 1956, the district court overruled the landowner's objections and found that the proposed taking appeared to be necessary and such as is provided by law and that the village should acquire an easement for a public way and path for pedestrian travel and have exclusive control of the same.

Thereafter on April 12, 1957, under M. S. A. 117.20(4), the village filed a final certificate of the taking of such strip of land from the owner, and on the same day the district court by an order approved such certificate.

The village of Kennedy is divided by Trunk Highway No. 75 and the Great Northern Railway. The highway and railway run side by side, and part of the village is on the west side of the highway and railway and the other part on the east side. The village is so laid out that a large part of the residential district is in its southeast part, wherein the community hall and only church are also located. West of this portion of the village and across the highway and railway is located the elementary and high school. Approaching the village from the south, there is no crossing over the trunk highway or railway until one crosses First to Fourth Streets inclusive, and comes to Fifth Street. Children living in the neighborhood of First and Second Streets on the east side of the village must walk north to Fifth Street to cross the railway and then back to the school which is located south of Third Street. Children living on the east side near First Street must walk seven or eight blocks to school although the school is only one or two blocks from their home. This same condition applies to residents on the west side who wish to attend programs in the community hall or attend church or visit neighbors on the east side.

The village council instituted these proceedings to condemn land to provide a public way, a pathway, for pedestrians or a pedestrian right-of-way connecting the east and west side of the village at a point directly opposite First Street which would give the citizens of the village access to the school, community hall, and other parts of the village. The landowner is opposed to any crossing of her land, but the district court held for the village, resulting in this appeal.

The only issue presented in this case is whether the village has the power to condemn land for the purpose of establishing a path or sidewalk. Two statutes are cited bearing on this issue. M. S. A. 412.211 reads as follows:

"Every village shall be a municipal corporation having the powers and rights and being subject to the duties of municipal corporations at common law. Each shall have perpetual succession, may sue and be

sued, may use a corporate seal, may acquire, either within or without its corporate limits, such real and personal property as the purposes of the village may require, by purchase, gift, devise, condemnation, lease or otherwise, and may hold, manage, control, sell, convey, lease, or otherwise dispose of such property as its interests require. The powers listed in this act are not exclusive and other provisions of law granting additional powers to villages or to classes of villages shall apply except where inconsistent with this chapter."

Section 412.221, subd. 6, reads as follows:

"The village council shall have power to lay out, open, change, widen or extend streets, alleys, parks, squares, and other public ways and grounds and to grade, pave, repair, control, and maintain the same; to establish and maintain drains, canals, and sewers; to alter, widen or straighten water courses; to lay, repair, or otherwise improve or discontinue sidewalks, paths and crosswalks. It shall have power by ordinance to regulate the use of streets and other public grounds, to prevent encumbrances or obstructions, and to require the owners or occupants of buildings and the owners of vacant lots to remove any snow, ice, dirt, or rubbish from the sidewalks adjacent thereto and in default thereof to cause such encumbrances, obstructions, or substances to be removed and the cost to be assessed against the property as a special assessment."

Both of these provisions were enacted by our legislature in 1949 as part of L. 1949, c. 119, §§ 28 and 29. It is to be noted that the pertinent part of § 412.211 is that "Every village * * * may acquire * * * real * * * property as the purposes of the village may require, by * * * condemnation * * *." The pertinent parts of § 412.221, subd. 6, are: "The village council shall have power to lay out, open, change, widen or extend streets, alleys, parks, squares, and other public ways and grounds * * *; to lay, repair, or otherwise improve or discontinue sidewalks, paths and crosswalks."

Certainly if read literally the above phrases would include the right of a village to condemn property for a path or sidewalk.

In particular the landowner argues that it cannot be held that the village had the authority to condemn this land under § 412.211 be-

cause it is a general statute and is controlled by the specific statute, § 412.221, subd. 6. Landowner in this connection cites § 645.26, subd. 1, which reads:

"When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail."

We see no conflict between these two statutes in question which would prevent them from being construed together.

Landowner further argues that the phrase of the statute which gives villages the power "to lay, repair, or otherwise improve or discontinue sidewalks, paths and crosswalks" does not apply in the instant case for it only allows the creation of a sidewalk or path after the village has acquired property for other purposes. Specifically the landowner's contention is that, if the legislature wished to give villages the power to condemn land for a path or sidewalk, it would have used the words "lay out sidewalks, paths, and crosswalks" rather than just using the words "lay * * * sidewalks, paths and crosswalks" as it did. In support of this argument landowner cites numerous cases which discuss the meaning of the words "to lay out and open" and "to lay." We have reviewed these cases carefully and it is our opinion that none of them distinguish the use of the words "lay out" and "lay" as used in our statutes.

In other words none of these cases support the contention of the landowner that the power to lay out a path or sidewalk includes the power to acquire land, but that the power to lay a sidewalk or path only gives the village the right to construct a path or sidewalk when it already possesses land. We think that the plain import of §§ 412.211 and 412.221, subd. 6, when read together is that villages do have the power to condemn land for paths or sidewalks, and it would seem to us that it would require a distorted construction of the wording of these

two provisions to hold that the legislature intended such a restricted construction as contended for by the landowner.

Affirmed.