In the Matter of the Petition in Eminent Domain Proceedings, by the CITY OF SHAKOPEE, a Municipal Corporation, by its City Council.

The CITY OF SHAKOPEE, petitioner, Respondent,

v.

John R. CLARK, et al., Respondents—below,

and

Metropolitan Waste Control Commission, intervenor, Appellant.

No. 50171.

Supreme Court of Minnesota.

June 13, 1980.

Holmes & Graven, David L. Graven, and Larry M. Wertheim, Minneapolis, for appellant.

Julius A. Coller II, Shakopee, for respondent.

Heard before OTIS, KELLY, and WAHL, JJ., and considered and decided by the court en banc.

KELLY, Justice.

The City of Shakopee petitioned for condemnation of certain land for a street easement. Claiming an interest in the land, the Metropolitan Waste Control Commission (MWCC) intervened. After a hearing, the trial court found that the city had authority to condemn the land and ordered commissioners to ascertain compensation for the owners. The MWCC now appeals from that order. We reverse.

The Metropolitan Waste Control Commission (MWCC) is a subsidiary of the Metropolitan Council set up pursuant to sections 473.501–.549 of the Minnesota Statutes to coordinate waste disposal in the seven-county metropolitan Twin Cities area. As part of the third phase of a three-phase project, the MWCC, sometime around 1975, determined that land should be obtained for a sludge disposal site to facilitate waste disposal from the southwest part of the metropolitan area including the Lake Minnetonka, Shakopee, and Prior Lake areas. To this end, the MWCC, on December 30, 1976, acquired unrecorded options to purchase land located in Shakopee (the Scottland and Whipps parcels). The MWCC has prepared an environmental assessment of the site.

The MWCC authorized the timely exercise of the options on the Scottland and Whipps parcels at a meeting on January 17, 1978. These options were then actually exercised by letters of January 19, 1978. The exercise of the options went unrecorded. Title to the Scottland parcel passed to the MWCC on June 22, 1978, and the deed was recorded on July 11, 1978. Title to the

Whipps parcel passed to the MWCC on May 25, 1978, and the deed was recorded on August 23, 1978.

The MWCC attempted to acquire a permit from the Shakopee City Planning Commission for the sludge site. This permit was denied, and the MWCC initiated a declaratory judgment suit to determine that it was exempt from city and county regulations or that the proposed actions were consistent with existing regulations. This case has been recently rendered moot by the passage of 1980 Minn.Laws, ch. 564. *See Metropolitan Waste Control Commission v. City of Shakopee*, 294 N.W.2d 1 (Minn. 1980).

The City petitioned to condemn a strip of land running across the southern portion of the Scottland and Whipps parcels for an easement that would extend the Valley View Road to connect County Roads 83 and 21 on March 24, 1978. There is no immediate need for the extension of the road. The indefinite future construction date will depend on the result of a comprehensive plan. The petition named as respondents only the holders of *record* interests in the land to be condemned and thus did not name the MWCC even though the city administrator had actual knowledge that the MWCC had authorized the exercise of options to purchase the Scottland and Whipps parcels. The Mayor of Shakopee was also present at the meeting at which the exercise was authorized.

The MWCC learned of the condemnation suit and intervened because of its interest in the property. A hearing was held on September 8, 1978. The trial judge in his factual findings found that there was no showing that the MWCC had any interest in the land other than options to purchase and that there was no "clear showing" that the MWCC would put the property to a public use in the future. In the memo accompanying his findings, however, the trial judge recognized that the MWCC had exercised the options at the time of the initiation of the lawsuit. The trial judge thus apparently decided the question on the ground that even though the commission's

exercised options made the land "public property," the city had authority to condemn because the property was not currently being put to a public use, and there was no clear showing that the property would ever be put to a public use. The city's petition to acquire the easement was thus allowed, and the MWCC brought this appeal. This case presents the following issues.

1. For the purposes of this action, were the Scottland and Whipps parcels "public property" as of the date of the initiation of the condemnation proceeding?

2. Under its general grant of eminent domain, does the City of Shakopee have an implied statutory right to condemn the MWCC's interest in the Whipps and Scottland parcels under the facts of this case? This breaks down into several questions:

a. May the city condemn the land on the ground that it is not currently in public use, and there was no "clear showing" that it would be put to public use in the future?

b. May the city condemn the land on the ground that the proposed extension of the Valley View Road is not substantially inconsistent with the use to which the MWCC intends to put the property?

c. Is the nature of the easement desired by the city such that the road cannot reasonably be constructed without encroaching on public property?

d. Does the legislative framework indicate that the city is authorized to condemn MWCC land?

 1. The uncontradicted evidence shows that the MWCC had an interest in the Scottland and Whipps parcels as of the initiation of the petition for condemnation on March 24, 1978. The Commission actually exercised its options on the land on January 19, 1978. Once a contract option has been exercised in accordance with its terms, it changes into a contract of purchase and sale; the relationship between the parties changing from optionor and optionee to vendor and vendee. *See Shaughnessy v. Eidsmo*, 222 Minn. 141, 146, 23 N.W.2d 362, 366 (1946); 91 C.J.S. *Vendor and Purchaser*

§ 13, at 863 (1955). A holder of a vendee's, or equitable, interest in land clearly has an interest that is compensable in a condemnation proceeding. *Cf. Hampel v. Gleason*, 303 Minn. 55, 57, 225 N.W.2d 844, 846 (1975) (" 'The vendee takes the equitable title, subject to the exercise of the right of eminent domain, just as though the title had been conveyed to him.' ") (quoting *Summers v. Midland Co.*, 167 Minn. 453, 456, 209 N.W. 323, 324 (1926)).

The Shakopee City Administrator admitted that he knew that the exercise of the options had been authorized by the Commission. The Mayor of Shakopee was also present at the meeting where the exercise was authorized. Under these circumstances, it would appear that the city should have named the MWCC in its original petition under Minn.Stat. §§ 117.055 and 117.-025, subd. 3 (1978).[1]

█ If the Commission should have been named as a party in the first place, it is difficult at this point to accept an argument that the lack of recordation of the Commission's interest should make a difference in whether the land in question is regarded as "public" for the purposes of a condemnation action. We hold that, under the facts of this case, the MWCC had sufficient interest in the property at the time of the initiation of the petition to raise any defense that the land was in public ownership.

█ 2(a). The general rule is that a condemnor to whom the right of eminent domain has been delegated may not condemn public property or property devoted to a public use unless such authority is expressly or impliedly granted by statute.[2] *See, e. g., Board of Water Commissioners v. Roselawn Cemetery*, 138 Minn. 458, 463, 165 N.W. 279, 281 (1917); 1 *Nichols on Eminent Domain*, §§ 2.2 and 2.2[1] (3d ed. 1979).

One of the situations in which implied legislative intent to condemn public land under a general grant of eminent domain has been found is the situation where the condemnee has not put its land to public use:

> The rule invoked exempts from condemnation, under a mere general power to condemn, property previously appropriated to another public use which has been actually put to such prior use, but does not exempt from condemnation property which has not been actually put to the prior public use, at least unless it be shown that the property is in fact needed for the prior public use and that effective measures are being taken to apply it thereto without undue delay.

*Board of Water Commissioners v. Roselawn Cemetery*, 138 Minn. at 463, 165 N.W. at 281. This is the ground on which the trial court found implied legislative intent for the city to condemn the MWCC land.

The trial court found that the evidence did not "clearly show" that the land would

---

1. The relevant portions of these statutes read:

 117.055. In all cases a petition, describing the desired land, stating by whom and for what purposes it is proposed to be taken, and giving the names of all persons appearing of record *or known to the petitioner to be the owners thereof* shall be presented to the district court of the county in which the land is situated praying for the appointment of commissioners to appraise the damages which may be occasioned by such taking.

 117.025. Subdivision 1. Unless the language or context clearly indicates that a different meaning is intended, the words, terms, and phrases defined in this section have the meanings given them * * *.

 Subd. 3. "Owner" includes all persons interested in such property as proprietors, tenants, life estate holders, encumbrancers, or otherwise. (Emphasis added.)

2. A general right of eminent domain is granted to statutory cities, such as plaintiff, in Minn. Stat. § 412.211 (1978), which authorizes such a city to "acquire, either within or without its corporate limits, such real and personal property as the purposes of the city may require, by purchase, gift, devise, condemnation, lease, or otherwise * * *." In addition, Minn.Stat. § 412.221, subd. 7 (1978), suggests that one of the purposes, among others, for a city to acquire property may be to lay out streets. *Cf. Village of Kennedy v. Sorenson*, 251 Minn. 397, 88 N.W.2d 89 (1958) (at time when the only difference in section 412.211 and 412.221, subd. 7, was that "city" or "cities" read "village" or "villages," they authorized a village to condemn property for a public sidewalk).

be put to a public use in the future. The standard as expressed in *Roselawn Cemetery*, however, exempts property that is "needed" for a public use where "effective measures are being taken to apply it thereto without undue delay"; the standard does not require a "clear showing" that it would be put to a public use. *See also Vermont Hydro-Electric Corp. v. Dunn*, 95 Vt. 144, 112 A. 223 (1921).

The facts of *Roselawn Cemetery* are instructive. In that case the cemetery corporation acquired a 250-acre parcel, only a small part of which was immediately appropriated for use for cemetery purposes. The St. Paul Board of Water Commissioners petitioned to condemn part of the parcel not then being used for cemetery purposes for its water system. The trial court allowed the petition and we agreed, stating that the evidence showed the property sought to be condemned was not needed for cemetery purposes. We noted that after condemnation, the cemetery corporation would still retain "more land suitable and available for cemetery purposes than is necessary for any contemplated increase in the size of its cemetery, and more than it has any expectation of devoting to cemetery purposes." 138 Minn. at 464, 165 N.W. at 281.

■ By contrast, in the present case, the uncontradicted evidence was that the MWCC's intent was to use all of the property as soon as possible as a sludge disposal site and that such a site was necessary. The Commission had already prepared an environmental assessment of the site, and the testimony of the MWCC staff engineer about the stages and planning of the third phase of the Blue Lake Plant project indicates that the MWCC fully intended to use the site for sludge disposal, and not for some other purpose.[3] In addition, the evidence showed that the Commission was making all possible efforts to put such a project into operation.

■ (b) An implied right to condemn public property under a general grant may also be found where the condemnor's use is not substantially inconsistent with that of the condemnee. *E. g., City of White Bear Lake v. Leuthold*, 172 Minn. 255, 259, 214 N.W. 930, 931 (1927). This is a factual question. *Minnesota Power & Light Co. v. State*, 177 Minn. 343, 350, 225 N.W. 164, 167 (1929).

The typical case in which this doctrine is applied is to allow two public easements to cross, as when a street crosses railroad tracks. *See Village of Lamberton v. Chicago & North Western Railway*, 196 Minn. 597, 265 N.W. 801 (1936); *Minneapolis & St. Louis Railroad v. Village of Hartland*, 85 Minn. 76, 88 N.W. 423 (1901); *St. Paul, Minneapolis & Manitoba Railway v. City of Minneapolis*, 35 Minn. 141, 27 N.W. 500 (1886). The theory is that a street crossing will not materially impair the operation of a railroad, or vice versa.

On the other hand, a street sought to be laid out across the grounds of a railroad depot would substantially impair the prior public use and thus is not allowed. *See St. Paul Union Depot Co. v. City of St. Paul*, 30 Minn. 359, 15 N.W. 684 (1883); *Milwaukee & St. Paul Railway v. City of Faribault*, 23 Minn. 167 (1876). And a powerline may be substantially inconsistent with the operation of a state park as a matter of law, even though the trial court had specifically made factual findings to the contrary. *Minnesota Power & Light Co. v. State*, 177 Minn. 343, 225 N.W. 164 (1929).

■ In our case the uncontradicted testimony was that the Commission had a policy of leaving a 300-foot buffer zone, where sludge would not be deposited, on the sides of a road running adjacent to, or through, a sludge disposal site. Because of this policy, the proposed extension of the Valley View

---

3. *In re St. Paul & Northern Pacific Railway*, 34 Minn. 227, 25 N.W. 345 (1885), and *University of Minnesota v. St. Paul & Northern Pacific Railway*, 36 Minn. 447, 31 N.W. 936 (1887), allowing a railroad company to condemn certain parcels of University land for a right-of- way, are distinguishable from the present case. In the previous cases, no evidence was reported in the opinions that the University had any future need for the parcels, or that it was attempting to put them to public use in the future. There is such evidence in this case.

Road would reduce the area available for sludge disposal by about 70 acres out of 565, shortening the useful life of the site by one to two years out of 15.

The trial court made no explicit factual findings on this issue. However, on this record, we hold that the MWCC's proposed use would be substantially impaired by a road easement as a matter of law.

(c) The court has found an implied statutory right under a general grant of eminent domain to condemn public property where the condemnor cannot otherwise "reasonably carry on its franchise powers without the appropriation." *Minnesota Power & Light Co. v. State*, 177 Minn. 343, 347, 225 N.W. 164, 165 (1929); *see 1 Nichols on Eminent Domain* § 2.2[1] & [2] (3d. ed. 1979).

This rule appears to be the other side of the coin from the rule that a condemnor may condemn public lands for a purpose not substantially inconsistent with the prior public use. Thus a railroad is not able to carry out its franchise without crossing a few public streets along the way. The necessity must be great: "A mere showing of convenience and lessening of expense is not sufficient." *Minnesota Power & Light Co. v. State*, 177 Minn. at 349, 225 N.W. at 166. "[T]he right should not be exercised where the desired purpose may be accomplished by a slight deviation or change of course." *State v. Christopher*, 284 Minn. 233, 239, 170 N.W.2d 95, 99 (1969), *cert. denied*, 396 U.S. 1011, 90 S.Ct. 570, 24 L.Ed.2d 502 (1970). *See generally 1 Nichols on Eminent Domain* § 2.2[1], at 2–74 (3d ed. 1979).

■ Evidence on this point was given by the planning consultant for Shakopee. He testified that in his opinion skirting the land to the south would double the cost of the road. The foundation for his opinion was impeached somewhat on cross-examination. In addition, the City Administrator admitted that there was no immediate need for the road, but that a proposed comprehensive plan "*may* show a need for the road." (Emphasis added.)

It appears that the city only proved that there may be an increase of expense resulting from a deviation in a road that it may or may not need. On these facts, the city has not proven absolute necessity to condemn MWCC property.

(d) The MWCC argues that an analysis of the statutory powers delegated to the respective parties to this action indicates that the legislature intended that the city not be allowed to condemn MWCC land under these circumstances.

■ The MWCC is given express authority by Minn.Stat. § 473.504 subd. 9 (1978) to condemn land owned by local governments under certain circumstances:

> The commission may acquire by purchase, lease, condemnation, gift, or grant, any real or personal property * * *. Unless otherwise provided, the right to acquire lands and property rights by condemnation shall be exercised in accordance with chapter 117, and shall apply to any property or interest therein owned by any local government unit; provided, that no such property devoted to an actual public use at the time, or held to be devoted to such use within a reasonable time, shall be so acquired unless a court of competent jurisdiction shall determine that the use proposed by the board is paramount to such use.

The city is given no such express statutory right to condemn public property. If the city is allowed to condemn the property with no immediate need for the road, the MWCC may, when it is in a position to begin to use the site, be able to turn around and acquire the property back because the city cannot prove that it intends to build the road within a reasonable time, or because sludge disposal is a paramount use. Prevention of this type of spectacle of two entities granted the right of eminent domain condemning each other's land is perhaps the primary reason for the prior public use doctrine. *See Minneapolis Western Railway v. St. Louis Railway*, 61 Minn. 502, 63 N.W. 1035 (1895).

■ Thus, at least in the situation where the MWCC has a present need for its

property and a present proposal for its use, the statutory framework indicates that the city does not have an implied right to condemn it.

This conclusion applies only under the present set of circumstances. If the future proves that the MWCC is unable to complete its efforts to use the land as a sludge disposal site and has at that time no proposed future public use for the site, then the result may well be different.

Reversed.