COUNTY OF STEARNS, petitioner,
Appellant,

v.

Frederick P. VOLLER, et
al., Respondents.

No. C5–98–322.

Court of Appeals of Minnesota.

Oct. 20, 1998.

Gerald W. Von Korff, Rinke–Noonan, St. Cloud, for appellant.

Douglas P. Anderson, Rosenmeier, Anderson & Vogel, Little Falls, for respondents.

Considered and decided by HUSPENI, P.J., and NORTON * and HOLTAN, JJ.

## OPINION

HARVEY A. HOLTAN, Judge.**

Appellant argues that the district court erred when it applied an "absolute necessity" standard to its petition to condemn land for the purpose of reconstructing of a county highway. We reverse.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

Appellant County of Stearns is seeking to reconstruct a nine-mile portion of County Road 18 that extends from Padua to the road's intersection with State Highway 28. The county's efforts began in 1991, when it first proposed reconstructing and widening County Road 18 to be consistent with state aid standards. The proposed project caused considerable controversy and could not gain majority support of the county board. Some citizens opposed road construction, some supported the improvements, and some farmers objected because the reconstruction would involve back-sloping that was too steep and asked the county board to redesign the project with much flatter drainage slopes. Because of citizen opposition and the uncertainty of the project's status, major road resurfacing and other maintenance could not be justified. Thus, the condition of the road deteriorated. The present condition of County Road 18 is described as "very poor" with the majority of the road surface being "alligatored." An "alligatored" road surface is one where the blacktop is broken into small chunks. The road condition has deteriorated to the point where it has affected the daily traffic flow because traffic was diverted to other roads. In 1981, the average daily traffic count was estimated to be 218 vehicles per day, in 1991 it was 137, and in 1995 it was 160.

In 1997, the Stearns County Engineer proposed a reconstruction design that would involve widening the shoulders and reshaping and redefining the roadside ditches by widening the road right-of-way from 66 feet to 100 feet. The county engineer attempted to accommodate all of the public and the safety concerns surrounding the proposed project. The project would increase the blacktop portion of the road from 22 feet to 24 feet and each shoulder area to 5 feet from the current 2 to 3 feet. The total road surface, including the shoulders, would be 34 feet. This design would better accommodate farm and other agricultural equipment, balance the geometry of the farm fields with driver safety, reduce

** Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

the back-sloping of the roadside drainage ditches, and increase visibility for drivers. The county engineer believed this design would reverse the downward trend in traffic and improve road safety.

Again, the proposed project caused considerable public controversy. The county board held a public hearing to review the proposed project. The board approved the proposed project and on September 15, 1997, the county commenced condemnation proceedings in Stearns County District Court. Respondent Frederick P. Voller and others challenged the county board determination of public necessity. The condemnation hearing was held on January 5, 1998. On February 4, 1998, the district court denied the county's petition for condemnation, ruling that it had failed to demonstrate public necessity for the taking.

## ISSUE

Did the district court err in requiring the county to demonstrate "public necessity" to support its condemnation petition?

## ANALYSIS

 The judiciary's review of condemnation actions is "very narrow." *County of Dakota v. Lakeville,* 559 N.W.2d 716, 719 (Minn.App.1997). "We review only whether the taking serves a public purpose and is necessary." *Id.* (citing *City of Duluth v. State,* 390 N.W.2d 757, 763, 764 (Minn. 1986)).[1]

Great weight must be given to the determination of the condemning authority, and the scope of review is narrowly limited. If it appears that the record contains some evidence, however informal, that the taking serves a public purpose, there is nothing left for the courts to pass upon. Courts may interfere only when the Authority's actions are manifestly arbitrary or unreasonable. The acts of an authority vested with legislative determination in a particular area are manifestly arbitrary or unreasonable where they are taken capriciously, irrationally, and without basis in law or

under conditions which do not authorize or permit the exercise of the asserted power. The court is precluded from substituting its own judgment for that of the Authority as to what may be necessary and proper to carry out the purpose of the plan. We do not understand that it is the function of the court to decide between conflicting opinions of the parties as to the advisability of a discretionary act. The question before us is one of the power of the Authority to exercise its judgment in making a determination where the power so to do has been conferred by statute.

*Housing & Redev. Auth. v. Minneapolis Metro. Co.,* 259 Minn. 1, 15, 104 N.W.2d 864, 874 (1960) (footnote omitted). Thus, under the court's limited scope of review, the decision of the condemning authority may be overturned only "if it [is] 'arbitrary, unreasonable, or capricious, or [if] *the evidence against the necessity* or public use *is overwhelming.*'" *City of Duluth,* 390 N.W.2d at 764 (quoting *Housing & Redev. Auth.,* 259 Minn. at 16, 104 N.W.2d at 875) (alteration in original).

 The question of public purpose and necessity are questions of fact for the district court and will be reversed only if clearly erroneous. *State by Humphrey v. Byers,* 545 N.W.2d 669, 672 (Minn.App.1996). The requisite necessity is not absolute necessity; "[i]t is enough to find that 'the proposed taking is reasonably necessary or convenient for the furtherance of a proper purpose.'" *City of Duluth,* 390 N.W.2d at 764–65 (quoting *City of Pipestone v. Halbersma,* 294 N.W.2d 271, 274 (Minn.1980)) (other citation omitted). "Judicial deference to a legislative determination that land being condemned is for a public use is * * * 'required until it is shown to involve an impossibility.'" *City of Duluth,* 390 N.W.2d at 762 (quoting *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 240, 104 S.Ct. 2321, 2329, 81 L.Ed.2d 186 (1984) (quoting *Old Dominion Land Co. v. United States,* 269 U.S. 55, 66, 46 S.Ct. 39, 40, 70 L.Ed. 162 (1925))) (footnote omitted).

---

1. Respondents contend that this court's review is limited to determining whether the evidence sustains the findings and the findings sustain the conclusions and order for judgment because the county failed to file a motion for a new trial. However, eminent domain proceedings are "spe-cial proceedings" and "a motion for a new trial is not needed to preserve issues for appellate review." *Park & Recreation Bd. v. Carl Bolander & Sons Property,* 436 N.W.2d 481, 482 (Minn. App.1989).

■ Here, the district court applied the higher standard of "public necessity" and ruled that "the burden is on the condemnor [Stearns County] to show the 'public necessity' for a wider road." The district court denied the county's condemnation petition, ruling that it had failed to demonstrate a present, or future, need to expand County Road 18 from its current 66–foot right-of-way to the proposed 100–foot right-of-way. On appeal, the county argues that the district court incorrectly applied the "absolute necessity" standard to deny its petition.

In reaching its decision, the district court rejected the county's reliance on *City of Pipestone*, 294 N.W.2d at 271. The district court stated that the county "incorrectly contends" that to show necessity for the project, it

> need only show that the proposed taking is "reasonably necessary or convenient for the furtherance of a proper purpose," rather than a higher showing of public necessity.

The district court then applied the "public necessity" standard articulated in *City of Shakopee v. Clark*, 295 N.W.2d 495 (Minn. 1980). The district court's reliance on *City of Shakopee* is misplaced.

■ It has long been held that in condemnation proceedings brought under Minn.Stat. ch. 117 (1996 & Supp.1997), the condemning authority is not required to "show an absolute or indispensable necessity, but only that the proposed taking is reasonably necessary or convenient for the furtherance of a proper purpose." *Kelmar Corp. v. District Court of Fourth Judicial Dist.*, 269 Minn. 137, 142, 130 N.W.2d 228, 232 (1964). This standard was reaffirmed in 1986 by the Minnesota Supreme Court in *City of Duluth*, 390 N.W.2d at 764–65, and recently applied by this court in *County of Dakota*, 559 N.W.2d at 720.

This case, unlike *City of Shakopee*, does not involve two governmental entities competing to condemn the same parcels of land. Here, the county is seeking to condemn the land of private property owners. As the county notes, the issue in *City of Shakopee* focused on "the circumstances under which a condemnor may take land already put to a public use by a superior governing authority." There, each of the two condemning authorities made competing and inconsistent determinations that its acquisition was more necessary and superior to the other authority. In such a situation, the courts were unable to give deference to the decisions of the condemning authorities. Because the land was already dedicated to a public purpose, the only question was how to determine which condemning authority had priority. The supreme court applied the higher "public necessity" standard to resolve the issue. The same considerations are not present in this case. Therefore, a showing of "public necessity" was not required by the county.

■ Applying the correct "reasonably necessary and convenient" standard, we conclude that the district court's findings that the county had failed to demonstrate that the widening of the road was "necessary" are clearly erroneous. During the condemnation hearing, the county engineer testified that widening County Road 18 would: (1) increase safety; (2) improve the drainage of the roadside ditches; (3) better balance the geometry of the farms fields next to the road with the road, thereby increasing driver safety; (4) increase the daily traffic flow; and (5) satisfy increases in the traffic flow in the long-term. "Safe accommodation of traffic demands is a valid public purpose." *County of Dakota*, 559 N.W.2d at 720 (citation omitted). Likewise, a taking serves a public purpose when it is done to address flooding on a road caused by problems with roadside ditches. *See Byers*, 545 N.W.2d at 674 (affirming district court's determination). On the record before us, the undisputed evidence establishes that the county's taking is reasonably necessary and conveniently furthers these purposes, along with the others articulated by the county engineer.[2]

Although respondents testified that increased safety was not needed on the road,

---

2. When addressing a legal issue, this court conducts an independent review of the record in light of the relevant law to determine whether the district court made the proper legal conclusion. *Hanks v. Hubbard Broad., Inc.*, 493 N.W.2d 302, 307 (Minn.App.1992), *review denied* (Minn. Feb. 12, 1993). Applying the correct legal standard to the undisputed facts in this case, we conclude that there is no need to remand this matter for further proceedings.

the flow of traffic would not likely increase, and that the current weight restrictions on the road did not hinder farming operations, the evidence in the record is not overwhelmingly against the necessity articulated by the county. *See City of Duluth,* 390 N.W.2d at 764 (holding condemnor's decision may be overturned, inter alia, "[if] *evidence against the necessity* or public use *is overwhelming*" (citation omitted)). The county's decision was reasoned, attempted to accommodate the concerns of many of the property owners, and was not taken as a pretext to advance any improper purpose. The evidence in the record amply supports the decision of the county and therefore is not overwhelmingly against it. It appears the district court improperly substituted its judgment for that of the county. *See Housing & Redev. Auth.,* 259 Minn. at 15, 104 N.W.2d at 874 (holding court may not substitute its own judgment for that of condemning authority as to what is necessary and proper to carry out purpose of plan). The county's decision is not arbitrary and capricious or taken for an improper purpose.

 The district court also denied the county's petition after concluding that there was no "need for an reconstructed County Road 18 because drivers could take alternate routes." However, when reviewing the decision of the condemning authority "on the necessity of its action, merely suggesting 'possible alternatives to the [authority's] plan does not support a finding of arbitrariness.'[sic]" *City of Duluth,* 390 N.W.2d at 766 (quoting *Metropolitan Sewer Bd. v. Thiss,* 294 Minn. 228, 230, 200 N.W.2d 396, 397 (1972)). Thus, when determining the issue of necessity, the district court was precluded from considering whether alternate routes existed and could not use this as a basis to deny the county's petition.

## DECISION

In the present case, the district court incorrectly applied the absolute necessity standard. Applying the correct legal standard, the undisputed evidence before us establishes that the county's taking is reasonably necessary and conveniently furthers the public purposes articulated by the county.

**Reversed.**