# IN THE SUPREME COURT OF IOWA

No. 15–0683

Filed March 10, 2017

**GARY N. PORTER** and **LORI PORTER,**

Appellees,

vs.

**RICHARD L. HARDEN** and **JANICE HARDEN,**

Appellants.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Wayne County, Paul R. Huscher, Judge.

Property owners seek further review of a court of appeals decision that found a farm tenancy existed and therefore reversed a district court judgment granting them possession of this property. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Richard L. Harden and Janice Harden, Lineville, pro se appellants.

Verle W. Norris, Corydon, for appellee.

**MANSFIELD, Justice.**

This case requires us to determine whether a tenant's decision to graze a single horse on the property where the tenant resides is enough to establish a farm tenancy and trigger the special termination protections of Iowa Code sections 562.5 through 562.7. Reading the statute as a whole, we conclude that land which is not devoted primarily to the production of crops or the care and feeding of livestock cannot be the foundation for a chapter 562 farm tenancy. Therefore, we affirm the judgment of the district court and vacate the decision of the court of appeals.

### I. Background Facts and Proceedings.

The essential facts are undisputed. For twenty-four years, Richard and Janice Harden lived in a home in Wayne County. Gary and Lori Porter owned this six-acre property. At some point, Richard Harden filed a lawsuit claiming he had an oral agreement to buy the property from Gary Porter, but the district court ruled against him, and in 2014, the court of appeals affirmed this ruling. *See Harden v. Porter*, No. 12–2293, 2014 WL 969970 (Iowa Ct. App. Mar. 12, 2014).

Thereafter, on January 23, 2015, the Porters served the Hardens with a thirty-day notice seeking to terminate the Hardens' tenancy of the property. At the conclusion of the thirty days, the Porters followed up with a three-day notice to quit and a forcible entry and detainer (FED) action. The Hardens filed an answer in the FED action, alleging that they had a farm tenancy and the Porters had not complied with the legal requirements for terminating a farm tenancy. *See* Iowa Code §§ 562.5–.7 (2015) (requiring written notice of termination of a farm tenancy to be served on or before September 1 for termination the following March 1).

The Hardens specifically alleged that they "occupied the property for agricultural purpose."

In addition, the Hardens alleged in their answer that the entire property consisted of nine acres and the Porters had not sought to terminate the west three-acre tract that another party—not the Porters—owned.[1] Further, the Hardens filed a separate action seeking relief under Iowa Code chapter 560 for various improvements they had allegedly made to the six-acre property, including $23,435 for rendering the residence habitable, $24,950 for erecting a metal shed, $25,080 for providing valuable labor and materials to Gary Porter, and $11,765 for building and installing an outdoor wood furnace.

The district court held a hearing in the FED action on March 24. The parties stipulated that there had been no actual rental agreement, that the Hardens were residing on the premises and kept one thirty-eight-year-old horse there, and that the Porters had served a thirty-day notice to terminate the tenancy.

The district court granted the Porters' motion to have the FED case docketed as an equity case rather than a small claims proceeding. It then ruled that the Porters had complied with the general requirements for terminating a tenancy at will, and that "the keeping of one 38-year-old horse does not make this a farm tenancy." The court therefore found that the Porters were entitled to removal of the Hardens from the premises at issue. The court ordered, however, that no execution or writ removal would issue until the Hardens' action for alleged improvements to the property had been resolved. *See* Iowa Code § 560.1.[2]

---

[1]The residence was located on the six acres. The three acres were landlocked and away from the road.

[2]This provision states,

The Hardens appealed. They argued that "one older mare" was sufficient to establish a farm tenancy. They also argued that the FED action should not have been decided until their action based on the improvements had also been resolved. Lastly, they maintained that the owners of the other three acres should have joined in the FED action and were necessary parties.

We transferred the case to the court of appeals. That court found that under the unambiguous statutory language, one pasturing horse was enough to establish a farm tenancy. It reasoned that Iowa Code section 562.1A's definition of "farm tenancy" indirectly incorporated Iowa Code section 717.1's definition of "livestock," and the latter definition included "an animal belonging to the . . . equine . . . species." Iowa Code § 717.1(4). On this basis, it found that "an" animal—i.e., one animal—was sufficient for a farm tenancy. The court of appeals also held that the exemption for farm tenancies of less than forty acres "where an animal feeding operation is the primary use of the acreage" did not apply because the Hardens mainly used the property as a residence, not an animal feeding operation. *See* Iowa Code § 562.6. Hence, while conceding that "it may seem absurd to deem this tenancy a farm tenancy," the court of appeals concluded the Porters had not complied with the chapter 562 requirements for termination of the Hardens' occupancy and reversed the district court's judgment.

We granted the Porters' application for further review.

---

> Where an occupant of real estate has color of title thereto and has in good faith made valuable improvements thereon, and is thereafter adjudged not to be the owner, no execution shall issue to put the owner of the land in possession of the same, after the filing of a petition as hereinafter provided, until the provisions of this chapter have been complied with.

Iowa Code § 560.1.

## II.  Standard of Review.

Forcible entry and detainer actions are equitable actions, and therefore our scope of review is de novo.  Iowa Code § 648.15; *Horizon Homes of Davenport v. Nunn*, 684 N.W.2d 221, 224 (Iowa 2004).  "We give weight to the district court's factual findings, but are not bound by them."  *Schaefer v. Schaefer*, 795 N.W.2d 494, 497 (Iowa 2011).  When the issue requires statutory interpretation, however, our review is for correction of errors at law.  *See Horizon Homes of Davenport*, 684 N.W.2d at 224.

## III.  Analysis.

Subject to certain qualifications, to terminate a farm tenancy, Iowa law generally requires written notice to be given on or before September 1 with termination to occur the following March 1.  *See* Iowa Code §§ 562.5–.7.  Our present law derives from legislation enacted in 1939.  *See* 1939 Iowa Acts ch. 235, § 1 (now codified as amended at Iowa Code §§ 562.5–.7).  In a 1943 decision, we upheld the constitutionality of this legislation and explained its justification as follows:

> It is quite apparent that during recent years the old concept of duties and responsibilities of the owners and operators of farm land has undergone a change.  Such persons, by controlling the food source of the nation, bear a certain responsibility to the general public.  They possess a vital part of the national wealth, and legislation designed to stop waste and exploitation in the interest of the general public is within the sphere of the state's police power.  Whether this legislation has, or will in the future, accomplish the desired result is not for this court to determine.  The legislature evidently felt that unstable tenure lead to soil exploitation and waste.  The amendment aims at security of tenure and it is therefore within the police power of the State.

*Benschoter v. Hakes*, 232 Iowa 1354, 1363–64, 8 N.W.2d 481, 487 (1943).  In other words, one objective of this law—which applied equally

to tenants and landlords—was to avoid having productive farmland go to waste by requiring significant advance notice before a change in possession occurred.

In *Morling v. Schmidt*, we decided that the existing law did not apply to premises used only for grazing rather than growing crops. 299 N.W.2d 480, 481 (Iowa 1980). There, the defendant tenant had placed cattle on the land for grazing in March or April of each year and would remove them around November. *Id.* The rest of the year the land remained vacant. *Id.* We held that the plaintiff landlord did not have to comply with the termination provisions of the law, because the statute then applied only to tenants "occupying and cultivating farms," Iowa Code § 562.5 (1979), and "[t]he land in question was not cultivated. It was used for grazing only." *Morling*, 299 N.W.2d at 481.

However, in 2006, the general assembly amended the law so that it generally applied to any "farm tenancy," which was now defined as follows:

> "Farm tenancy" means a leasehold interest in land held by a person who produces crops or provides for the care and feeding of livestock on the land, including by grazing or supplying feed to the livestock.

2006 Iowa Acts ch. 1077, § 1 (codified at Iowa Code § 562.1A(2) (2015)).

At the same time, the legislature added a definition of "livestock" to be utilized for purposes of a "farm tenancy." *See id.* Specifically, the legislature said, " 'Livestock' means the same as defined in section 717.1." *Id.* (codified at Iowa Code § 562.1A(3)).

Interestingly, Iowa Code section 717.1 is part of chapter 717, a chapter of the criminal code relating to livestock abuse and neglect. Section 717.1 defines livestock as follows:

> "*Livestock*" means an animal belonging to the bovine, caprine, equine, ovine, or porcine species, ostriches, rheas, emus; farm deer as defined in section 170.1; or poultry.

Iowa Code § 717.1(4).

As noted above, the court of appeals observed that there was no numerical limitation in the Iowa Code section 717.1 definition of "livestock"; it could apply to a single animal. Thus, the court of appeals overturned the district court's ruling and found that a farm tenancy could be "premised on the grazing of a single horse."

We believe, however, that the court placed too much emphasis on one phrase—i.e., "an animal"—within a definition, and not enough emphasis on the entire statute. For example, in *U.S. Bank National Ass'n v. Lamb*, we recently pointed out that the "legislative use of terms such as 'any' and 'all' often require contextual analysis of surrounding language to determine their precise meaning." 874 N.W.2d 112, 116 (Iowa 2016). The same observation can be applied to the term "an."

Statutes need to be read as a whole, both in initially determining whether ambiguity exists and, later, in construing the statute. *See Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Justice*, 867 N.W.2d 58, 72 (Iowa 2015); *see also* Iowa Code § 4.1(38) ("Words and phrases shall be construed according to the context and the approved usage of the language . . . ."); *Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.*, 880 N.W.2d 212, 221 (Iowa 2016) ("Context is king.").

Under Iowa law, a farm tenancy is defined as "a leasehold interest in land held by a person who produces crops or provides for the care and feeding of livestock on the land." Iowa Code § 562.1A(2). While there is no primary purpose test expressly set forth in the statute, the statute does require that "the land" be used for producing crops or the care and feeding of livestock. This could be reasonably interpreted as requiring

that the land be mostly or primarily devoted to crops or livestock. "The land" seems to refer to the entire property, and a primary purpose test avoids two unreasonable endpoints: (1) that a farm tenancy would not exist unless every acre were turned over to agricultural use or, alternatively, (2) that devoting a tiny portion of the property to agricultural use would bring about a farm tenancy.

The canon of *noscitur a sociis* supports such a construction. This rule provides that the meanings of particular words may be indicated or controlled by associated words. *See Des Moines Flying Serv.*, 880 N.W.2d at 221. Just as we would not conclude that someone with a small vegetable garden "produces crops . . . on the land" for purposes of Iowa Code section 562.1A, we think it would be questionable to hold that someone keeping an old mare at the homestead "provides for the care and feeding of livestock on the land" within the meaning of the same statute. *See* Iowa Code § 562.1A(2).

From what we can tell, the legislature's 2006 amendment on farm tenancies simply borrowed a preexisting definition of livestock that was already being cross-referenced throughout the Iowa Code. *See, e.g., id.* § 15E.202(2) (2005) (incorporating the section 717.1 definition in the Iowa Agricultural Industry Finance Act); *id.* § 159.5(14) (incorporating the section 717.1 definition in a section outlining the powers and duties of the secretary of agriculture); *id.* § 163.3A(1) (Supp. 2005) (incorporating the section 717.1 definition in a section on veterinary emergency preparedness response); *id.* § 172E.1(2) (2005) (incorporating the section 717.1 definition in a chapter on dairy cattle sold for slaughter); *id.* § 484B.1(6) (incorporating the section 717.1 definition in a chapter on hunting preserves); *id.* § 501A.102(14) (Supp. 2005) (incorporating the section 717.1 definition in the Iowa Cooperative

Associations Act); *id.* § 717D.1(5) (2005) (incorporating the section 717.1 definition in a chapter on animal contest events). In many of the contexts where the definition was already being used, the statute seemingly required more than one animal. *See, e.g., id.* §§ 15E.205, .209 (describing the eligible recipients of financing from agricultural industry finance corporations); *id.* § 163.3A(1) (Supp. 2005) (authorizing the secretary of agriculture to "provide veterinary emergency preparedness and response services necessary to prevent or control a serious threat to the public health, public safety, or the state's economy caused by the transmission of disease among livestock"); *id.* §§ 172E.1–.2 (2005) (imposing requirements on a "livestock market" that accepts dairy cattle); *id.* §§ 484B.11–.12 (requiring game birds and ungulates on a licensed hunting preserve to be "free of diseases considered significant for . . . livestock"); *id.* § 501A.501(1) (Supp. 2005) (providing that a cooperative may be formed and organized "[t]o store or market agricultural commodities, including . . . livestock"). Thus, as in some of these other contexts, we think the legislature's incorporation of the section 717.1 definition in section 562.1A simply denotes covered *species*, and does not establish a no-exceptions, single-animal rule of qualification.

Additionally, Iowa Code section 4.1(17) provides that "[u]nless otherwise specifically provided by law the singular includes the plural, and the plural includes the singular." Iowa Code § 4.1(17) (2015). This should caution us against reading too much into the presence of the words "a" or "an" in a statute depending on the context. *See State v. Velez,* 829 N.W.2d 572, 587 (Iowa 2013) (Wiggins, J., dissenting) (stating that under the rule in section 4.1(17), " 'an' is not definitively singular or plural"); *see also, e.g., Johnson v. Johnson,* 564 N.W.2d 414, 417–18

(Iowa 1997) (relying in part on section 4.1(17) in holding that a statute providing that "[t]he owner and operator of an all-terrain vehicle . . . is liable" for injury or damage occasioned by the vehicle's negligent operation makes both the owner and the operator liable if they are separate persons). Here the entire clause—"land held by a person who . . . provides for the care and feeding of livestock on the land"— provides needed background and suggests that the focus should be on how *the land* is being used overall, not necessarily on whether a single animal qualifying as "livestock" is grazing on it.

We also presume that the legislature intended a "reasonable result." Iowa Code § 4.4(3); *see Roth v. Evangelical Lutheran Good Samaritan Soc.,* 886 N.W.2d 601, 610 (Iowa 2016). Moreover, when a statute is ambiguous, we may consider "[t]he object sought to be attained." Iowa Code § 4.6(1); *see United Suppliers, Inc. v. Hanson*, 876 N.W.2d 765, 778 (Iowa 2016). As we have noted, the purpose of the farm tenancy law was to avoid "waste and exploitation," such as the idling of a productive farming operation due to an ill-timed termination. *See Benschoter*, 232 Iowa at 1363–64, 8 N.W.2d at 487. Yet an ironclad rule that the presence of a single livestock animal could postpone the termination of a tenancy for (as here) over a year appears to undermine this statutory objective, rather than serve it. And such a rule would also introduce possibilities for gamesmanship. It is relatively easy to bring one animal onto premises temporarily, whereas a bona fide farm requires much more time and investment. Under the court of appeals' approach, even a city dweller who keeps a few chickens in her or his backyard could become a farm tenant. *See* Iowa Code § 717.1(4) (including "poultry" in the definition of livestock).

The legislature is, of course, entitled to act as its own lexicographer, and in this case it did so. *See In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). However, when the legislative definition of a term itself contains ambiguity, we should hesitate before veering too far from the common meaning of that term. Webster's Dictionary defines "farm" as a tract of land "*devoted* to agricultural purposes" or "*devoted* to the raising of animals." *Farm, Merriam-Webster's Collegiate Dictionary* (10th ed. 2002) (emphasis added). This common meaning also supports a primary purpose test for a "farm tenancy." *See Charlestown Township v. Fuguet*, 366 A.2d 1386, 1387 (Pa. Cmmw. Ct. 1976) (holding that keeping one horse and one pony does not constitute the "raising, maintenance, or breeding of livestock" because "the term 'livestock' . . . is intended to refer to a group of cattle, hogs, or horses maintained and utilized in connection with an agricultural enterprise").

One other point should be made. In 2006, the legislature exempted acreages of less than forty acres from the termination notice requirements for farm tenancies. *See* 2006 Iowa Acts ch. 1077, § 3 (codified at Iowa Code § 562.6 (2007)). However, in 2013, the legislature narrowed this exemption to farm tenancies of less than forty acres "where an animal feeding operation is the primary use of the acreage." 2013 Iowa Acts ch. 44, § 2 (codified at Iowa Code § 562.6 (2015)). The court of appeals found that the Porters could not rely on this exemption because an animal feeding operation was not the primary use of the acreage. This highlights, however, an incongruity that the legislature could not have intended. If the court of appeals is correct, an *extensive* animal feeding operation occupying less than forty acres could be terminated on the thirty days' notice generally applicable to at-will leases, but a *de minimis* animal feeding operation on less than forty acres

(assuming no other farming activity) would require at least six months' notice. *See* Iowa Code §§ 562.5–.7. This makes no sense and strongly suggests to us that a *de minimis* amount of agriculture-related activity was not to be considered a farm tenancy in the first place.

For all these reasons, we conclude that merely keeping a single horse at a residence does not establish a farm tenancy for purposes of Iowa Code chapter 562. We do not foreclose the possibility that the presence of one covered animal *could* be deemed a farm tenancy in a different case. For example, a plot of land devoted to maintaining a champion stallion could result in a farm tenancy if that was the primary purpose for which the tenant occupied the land. However, those are not the facts here. To summarize, while Iowa Code section 717.1(4) defines "livestock" as "an animal" belonging to certain species, this does not mean that a farm tenancy under section 562.1A arises *every* time a single animal of one of those species is present on the land. Reading section 562.1A's definition of farm tenancy as a whole we find it to be ambiguous, and applying the various construction tools described above we find a primary purpose test to be appropriate.[3]

---

[3]As we have discussed in the main text, the primary purpose test refers to the principal use of the land. Thus, a tenant may be able to meet the test even if she or he is not engaged in a for-profit enterprise, so long as the land is devoted to raising crops or grazing livestock. A similar test is used in the zoning context. *See* Iowa Code § 335.2 (providing for a zoning exemption when land is "primarily adapted, by reason of nature and area, for use for agricultural purposes, while so used"); *Kramer v. Bd. of Adjustment*, 795 N.W.2d 86, 92–93 (Iowa Ct. App. 2010). We are unaware that this standard has proved difficult to administer.

Moreover, a dispositive "one animal is enough" standard would not necessarily be easier to administer and, as noted above, would be subject to abuse. How long does the animal have to be on the land?

If the legislature wanted us to follow a dispositive "one animal is enough" standard, it could have written the statute as follows: " 'Farm tenancy' means a leasehold interest in land that contains any number of feeding or grazing livestock." Instead, the statute reads, " '*Farm tenancy*' means a leasehold interest in land held by a person who . . . provides for the care and feeding of livestock on the land, including by

A remand is not necessary in this de novo action. The Porters terminated the tenancy in accordance with the normal procedures for ending a tenancy at will. As an affirmative defense in this FED action, the Hardens then alleged they had a farm tenancy and the Porters had not complied with the farm-tenancy statute. The Hardens bore the burden of proof on this affirmative defense. *See Petty v. Faith Bible Christian Outreach Ctr., Inc.*, 584 N.W.2d 303, 306 (Iowa 1998) (indicating that the tenant bore the burden of proof on any affirmative defenses in an FED action); *Bernet v. Rogers*, 519 N.W.2d 808, 810 (Iowa 1994) (same); *Hillview Assocs. v. Bloomquist*, 440 N.W.2d 867, 869 (Iowa 1989) (same). Thus, it was the Hardens' burden to prove they had a farm tenancy within of Iowa Code section 562.1A. All they established, however, was the stipulated fact that they had one thirty-eight-year-old horse on this property where they resided. That was insufficient to demonstrate that the land was primarily devoted to the care or feeding of livestock. As the district court put it, "[T]he keeping of one 38-year-old horse does not make this a farm tenancy."

The Hardens have raised two additional arguments below and on appeal. One is that Iowa Code chapter 560 barred the FED action altogether. We disagree. Iowa Code section 560.1 states,

> Where an occupant of real estate has color of title thereto and has in good faith made valuable improvements thereon, and is thereafter adjudged not to be the owner, no execution shall issue to put the owner of the land in possession of the same, after the filing of a petition as hereinafter provided, until the provisions of this chapter have been complied with.

___

grazing or supplying feed to the livestock." Iowa Code § 562.1A(2). This longer definition, we believe, embraces the concept that the land is primarily used for the care and feeding of livestock. In other words, that is what the tenant is "provid[ing] for" on "the land."

Iowa Code § 560.1. Thus, the statute does not prohibit a proceeding going forward to determine the *right* to possession, such as an FED action. *See Capital Fund 85 Ltd. P'ship v. Priority Sys., LLC*, 670 N.W.2d 154, 159 (Iowa 2003) (describing the purpose of an FED action). It merely prohibits the issuance of execution to remove the occupant. Of course, a judgment for the Hardens in the chapter 560 case could enable them under some certain circumstances to retain possession. *See* Iowa Code § 560.4; *In re Estate of Waterman*, 847 N.W.2d 560, 568 (Iowa 2014).

The Hardens also urge that the back three acres also should have been the subject of the FED action. Again, we disagree, since the Hardens concede this parcel is under separate ownership.

**IV. Conclusion.**

For the reasons stated, we vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Wiggins, J., who dissents.

**WIGGINS, Justice (dissenting).**

When a statute's language is plain and unambiguous, we look no further than the statute. *Zimmer v. Vander Waal*, 780 N.W.2d 730, 733 (Iowa 2010). Here, we have an unambiguous statute, thus it is unnecessary for us to resort to the rules of statutory construction. Yet, the majority ignores this principle, and forges ahead with its own construction of Iowa Code section 562.1A(2) (2015).

In doing so, the majority opinion disregards the primary tenants of statutory construction. In interpreting a statute, we must determine legislative intent. *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004). We determine legislative intent from the words chosen by the general assembly, not by what the general assembly should or might have said. *State v. Dohlman*, 725 N.W.2d 428, 431 (Iowa 2006).

The majority adds a primary purpose test to Iowa Code section 562.1A(2), when the general assembly did not include a primary purpose test in the statute. The majority also suggests the phrase "an animal" contained in the definition of livestock in Iowa Code section 717.1 means more than one animal for purposes of section 562.1A(2). By reaching these conclusions, the majority is manipulating the plain language chosen by the general assembly to reach what it feels is a just result.

I understand that the general assembly may not have wanted to apply section 562.1A(2) to a fact situation such as the one in this case, but it is the general assembly's task to write the law to express that policy, not the court's. By rewriting the plain language of the statute, the majority is imposing its policy on the people of this state. Therefore, I agree with the court of appeals that the plain language of section 562.1A(2) does not include any limiting language to exclude a leasehold

where only one horse grazes. Thus, the Porters must comply with the farm-tenancy-notice requirements under sections 562.5 and 562.7.

At one time, the Porters grazed cattle and had up to eight horses on the property. They claim they pared down their agricultural use because of this dispute. The primary purpose test as written in to the statute by the majority will cause needless litigation, leaving courts to guess whether to apply it at the time the party's executed the lease or at the time of its termination.

Furthermore, the record is devoid of any evidence that the Hardens were not using "the land" primarily for agricultural purposes with just one horse, yet the majority still finds section 562.1A(2) does not apply. The majority leaves open the possibility that one horse may be enough to create a farm tenancy, but gives no guidance on how a court should apply this test. It is anyone's guess as to what kind of horse would establish a farm tenancy, perhaps only a special horse—a champion stallion—as the majority suggests. In this case, the district court must make this factual finding, not the majority. *See Hutchison v. Shull*, 878 N.W.2d 221, 237 (Iowa 2016) (requiring a remand for the district court to find facts when this court interprets a statute differently than the district court applied it).

In addition, under the majority's primary purpose test, it is unclear whether section 562.1A(2) includes hobby farmers or people who grow crops and raise livestock for charitable causes. Additionally, how does the primary purpose test apply to the family who works in the city, but live in the country to own horses or grow crops for their personal use. Furthermore, if you earn your principal income off the farm by working in town, do you meet the majority's primary purpose test?

The majority attempts to use our zoning law's primary purpose test to make its rewritten statutory scheme work. It does not. Zoning laws generally do not mix residential and commercial uses in the same property. Thus for zoning purposes it is easy to determine the primary use. Under this statute, it is not that easy.

Again, what about the couple who moves their family to rural Iowa to raise their children with Iowa's rural farm values. On the farm, the family cultivates crops and grazes animals. However, the family's farm operation does not provide enough income to support the family, so both parents work outside the farm to supplement their incomes. The plain language of the statute protects this family. Who knows if the majority's rewritten statutory scheme would protect the same family?

Finally, the majority weakens our criminal laws regarding injury to livestock found in chapter 717 of the Code. It is clear the legislative intent in sections 717.1A and 717.2 was to criminalize livestock abuse and neglect for abuse or neglect of one or two animals. *See State v. Wells*, 629 N.W.2d 346, 354, 357 (Iowa 2001) (upholding defendant's conviction on a single count of livestock neglect for the death of two of his horses). By manipulating the word "an" in section 717.1(4), a person could now argue he or she is not guilty of livestock abuse unless it is more than one or two horses or a special kind of horse. The general assembly clearly did not contemplate this result.

In summary, I would apply the statute as written and not go through the mental gymnastics used by the majority to reach this result. The majority decision creates more uncertainty than it resolves. For these reasons, I dissent.