# IN THE SUPREME COURT OF IOWA

No. 21–0479

Submitted March 23, 2022—Filed April 29, 2022

**ACC HOLDINGS, LLC,**

Appellee,

vs.

**TODD ROONEY,**

Appellant,

and

PARTIES IN POSSESSION,

Defendants.

---

Appeal from the Iowa District Court for Warren County, Richard B. Clogg, Judge.

A homeowner who failed to pay certain property taxes appeals the district court's grant of summary judgment to the tax deed holder in a forcible entry and detainer action, arguing that the two-dismissal rule bars the tax deed holder's third action. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

Mansfield, J., delivered the opinion of the court, in which all justices joined.

David R. Elkin of Law Office of David R. Elkin, Des Moines, for appellant.

Cameron K. Wright and R. Bradley Skinner of Skinner Law Office, P.C., Altoona, for appellee.

**MANSFIELD, Justice.**

### I. Introduction.

Iowa Rule of Civil Procedure 1.943 allows plaintiffs to dismiss their petitions without prejudice and start over—once. In this case, a tax deed holder tried to stretch the limits of this rule in a forcible entry and detainer (FED) action. Twice, the tax deed holder purported to dismiss without prejudice its FED petition against the property owner who had failed to pay taxes. Twice, the tax deed holder refiled.

Under rule 1.943, a second voluntary dismissal operates as an "adjudication on the merits" unless the court orders otherwise in the interest of justice at or before the time of dismissal. Yet the district court allowed the third FED action to go forward. We believe this was in error. The third action involved the same tax deed and the same continued occupancy as the two prior actions; therefore, it involved the same claim. For this reason, we reverse the judgment of the district court granting the tax deed holder possession of the property and remand for dismissal of this action. Our dismissal, however, does not preclude the tax deed holder from bringing a quiet-title action.

### II. Facts and Procedural History.

Todd Rooney owned a home at 2103 Shady Lane Drive in Norwalk, where he has lived since 1987. Rooney failed to pay property taxes to the Warren County Treasurer for the 2015 year. His home eventually went to tax sale on June 19, 2017. ACC 298 LLC and Dutrac purchased the property for $2,985—the amount then unpaid.

Rooney did not redeem the property. Instead, after nearly three years had elapsed, ACC 298 and Dutrac served a final notice to redeem on May 6, 2020. *See* Iowa Code § 447.9(1) (2017). The notice advised Rooney that if he failed to redeem the house within ninety days, the right of redemption would expire, and ACC 298 and Dutrac would receive a deed to the property. Rooney still did not redeem the property, so on August 26, ACC Holding LLC (ACC), as assignee of ACC 298 and Dutrac, obtained a tax deed.

On September 22, ACC arranged for its first three-day notice to quit to be served on Rooney. Eight days later, on October 1, ACC filed its first FED action against Rooney with the small claims division of the Warren County District Court. The petition alleged that Rooney was "possessing the property after the issuance of a valid tax deed." Rooney moved to dismiss the first FED for lack of subject matter jurisdiction on the ground that the small claims division does not have jurisdiction over FED actions based on tax deeds. *See id.* § 631.1(2). On October 16, before the small claims court had ruled on Rooney's motion to dismiss, ACC voluntarily dismissed its first FED action without prejudice.

Meanwhile, on October 15, one day before dismissing its small claims petition, ACC had already filed its second FED action—this time in the district court itself. Attached to this petition was the same September 22 notice to quit that had accompanied the petition previously filed in small claims court. On December 22, without stating a reason, ACC voluntarily dismissed the second FED petition.

Once again, ACC had already filed another FED action. On December 21, ACC brought its third FED petition. This petition was also filed in the Warren County District Court and alleged that Rooney "remain[ed] in possession after the issuance of a valid tax deed." Attached to this petition was a new three-day notice to quit that had been served on December 15.

An FED hearing was set for January 5, 2021. On January 4, Rooney answered and moved for summary judgment. He asserted three defenses: (1) the two-dismissal rule of Iowa Rule of Civil Procedure 1.943, (2) the thirty-days' peaceable possession defense in Iowa Code section 648.18, and (3) a claim that he had a legal disability entitling him to additional time to redeem the property pursuant to Iowa Code section 447.7. Regarding the third defense, Rooney asserted that on October 15, 2020, he had filed a separate action challenging the tax deed sale on the basis of legal disability. *See id.* § 447.7(3) (providing that the person with a legal disability forfeits any right of redemption when an action for possession is brought unless that person files a counterclaim or a separate action).

At the hearing, the parties presented legal argument on the first two issues. They also agreed that the district court could try the issue of whether Rooney has a legal disability. Concerning that third issue, Rooney testified that he has had a reading disability since fourth grade. But he acknowledged that he ended up graduating from college and owning a concrete contracting business. He said that he's "very good" at what he does and "[has] been doing it for twenty years." Rooney also explained that he had been injured in a hunting accident

about a year and a half earlier that left him temporarily paralyzed below the waist and still caused him considerable pain. Rooney admitted that he handled the secretarial work for his concrete business "and worked with the taxes and stuff." Rooney also admitted that he handled the preparation of his own personal income tax returns.

On March 14, the district court entered an order denying Rooney's motion for summary judgment and awarding possession to ACC. On the first issue, the court held that the voluntary dismissals of the previous FED actions by ACC "were not final adjudications pursuant to Iowa R. Civ. P. 1.943." On the matter of thirty days' peaceable possession, the court reasoned that Rooney's ongoing possession of the property "g[ave] rise to new causes of action as time passe[d]." Finally, the court found the evidence insufficient to establish Rooney had a legal disability.

Rooney appealed, and we retained the appeal.

**III. Standard of Review.**

"Forcible entry and detainer actions are equitable actions, and therefore our scope of review is de novo." *Porter v. Harden*, 891 N.W.2d 420, 423–24 (Iowa 2017).

**IV. Legal Analysis.**

**A. Impact of the Two-Dismissal Rule on ACC's Third FED Action.** Iowa Rule of Civil Procedure 1.943 provides,

> A party may, without order of court, dismiss that party's own petition, counterclaim, cross-claim, cross-petition or petition of intervention, at any time up until ten days before the trial is scheduled to begin. Thereafter a party may dismiss an action or that

party's claim therein only by consent of the court which may impose such terms or conditions as it deems proper; and it shall require the consent of any other party asserting a counterclaim against the movant, unless that will still remain for an independent adjudication. A dismissal under this rule shall be without prejudice, unless otherwise stated; *but if made by any party who has previously dismissed an action against the same defendant, in any court of any state or of the United States, including or based on the same cause, such dismissal shall operate as an adjudication against that party on the merits, unless otherwise ordered by the court, in the interests of justice.*

(Emphasis added.)

Notwithstanding the district court's reasoning, we think it is clear that each voluntary dismissal was final. *See Valles v. Mueting*, 956 N.W.2d 479, 484 (Iowa 2021) (stating that a voluntary dismissal "was self-executing and marked the date of finality for appeal purposes"). Also, it is clear that the first two FED actions involved the same cause of action because they relied on the very same three-day notice to quit. Therefore, pursuant to rule 1.943, the voluntary dismissal of the second FED action "operate[d] as an adjudication . . . on the merits, unless otherwise ordered by the court, in the interests of justice."

In *Smith v. Lally*, 379 N.W.2d 914 (Iowa 1986), we expounded on the meaning of this final clause of rule 1.943 (which was then known as rule 215). In *Smith*, the plaintiffs filed a medical malpractice action originally in Johnson County. *Id.* at 915. When the defendants moved for a change of venue, the plaintiffs refiled in Scott County and voluntarily dismissed without prejudice their Johnson County action. *Id.* Again the defendants moved for a change of venue, and again the plaintiffs refiled—this time in Dubuque County—and dismissed their Scott County action without prejudice. *Id.* We held that the two-

dismissal rule barred the plaintiffs' action in Dubuque County even though the plaintiffs had brought their new actions before voluntarily dismissing their old ones. *Id.* at 915–16. We explained, "The purpose of the rule is to prevent indiscriminate dismissals of actions by litigants. Repeated filings and dismissals obviously have a harassing effect that the two-dismissal rule is designed to prevent." *Id.* at 916 (citation omitted).

We also found that the Scott County district court had correctly ruled that it could not "enter a subsequent order determining in the interests of justice that the dismissal would not constitute an adjudication against plaintiffs on the merits." *Id.* "[S]uch a determination could only be made before or contemporaneously with the dismissal." *Id.*

Given *Smith v. Lally*, the only open question is what significance the adjudication on the merits of ACC's *second* FED action holds for ACC's *third* FED action. ACC maintains that its third FED action was a new and separate claim based on Rooney's continued occupancy of 2103 Shady Lane Drive during the fall of 2020. We disagree.

In this case, the third FED action involved the same transaction as the first two. It didn't present new conduct (i.e., conduct that didn't exist before) or an additional breach (e.g., the failure to pay additional monies). There was, instead, the same tax deed plus the same ongoing and continuous fact of occupancy. If we exempted this situation from the two-dismissal rule, then it would be difficult to see when that rule could *ever* apply to equitable claims where the defendant's conduct, by its nature, continues.

In *Conkling v. Conkling,* we rejected the application of the two-dismissal rule to a divorce petition. 185 N.W.2d 777, 783 (Iowa 1971). We acknowledged that the "defendant's dismissal of her second divorce suit on November 3, 1967, constitutes an adjudication against her on the merits to that date." *Id.* at 782. But we found that any "intervening events" after the date of the second dismissal could be raised. *Id.* at 783. Here, in contrast, there are no subsequent events other than the same occupancy as before.

This is like *U.S. Bank National Ass'n v. Gullotta,* where the Ohio Supreme Court held that the two-dismissal rule barred a mortgagee from bringing a third foreclosure action on the same accelerated debt. 899 N.E.2d 987, 988 (Ohio 2008). As the court explained,

> The significant facts here are that the underlying note and mortgage never changed, that upon the initial default, the bank accelerated the payments owed and demanded the same principal payment that it demanded in every complaint, that Gullotta never made another payment after the initial default, and that U.S. Bank never reinstated the loan.

*Id.* at 990; *see also Nolan v. MIA Real Holdings, LLC,* 185 So. 3d 1275, 1276 (Fl. Dist. Ct. App. 2016) ("The two voluntary dismissals, taken by two different plaintiffs but involving the same note and the same breach, required that the second dismissal operate as an adjudication on the merits; if it wanted to pursue its claim for non-payment, MIA was required to refile a lawsuit against the homeowners alleging a new and separate breach by non-payment on the note."). There is some contrary authority. *See, e.g., In re Foreclosure of a Deed of Trust Executed by Herndon,* 781 S.E.2d 524, 530 (N.C. Ct. App. 2016) (holding that a third foreclosure action was not barred by the lender's prior election to accelerate

payment on a note because additional defaults in payment occurred subsequent to the dismissal of each of the two prior actions). Yet, even in such cases, the defendant committed additional defaults, not merely continued occupancy.

Finally, consider a thought experiment. Suppose a district court had *involuntarily* dismissed the second FED action. Would a district court have allowed ACC to bring a third FED action based merely on the same tax deed and the same continued occupancy? We think clearly not. Accordingly, rule 1.943 barred ACC's third FED action, and it was error for the district court to conclude otherwise.[1]

**B. Would a Quiet-Title Action Be Barred?** Because this issue is likely to arise in the near future, we now address whether today's decision would bar ACC from bringing a quiet-title action against Rooney. *Cf. Petty v. Faith Bible Christian Outreach Ctr., Inc.*, 584 N.W.2d 303, 308 (Iowa 1998) (stating that the thirty days' peaceable possession bar in Iowa Code section 648.18 "does not preclude ordinary actions for possession of real estate which may be brought under chapter 646 (recovery of real property)").

We believe it would not.

> Since an action in forcible entry and detainer does not usually affect title to the premises, the judgment is generally not a bar to an action between the same parties relating to the title to the premises or to litigation of the issue of title in the second action, such as actions of ejectment, foreclosure actions, actions of trespass, actions

---

[1]In *Bank of New York Mellon v. Dodev*, the Arizona Court of Appeals found that the two-dismissal rule in Arizona's Rules of Civil Procedure did not apply to an FED action. 433 P.3d 549, 556 (Ariz. Ct. App. 2018). However, that decision was based on the fact that Arizona applies a separate set of procedural rules, rather than its normal rules of civil procedure, to FED cases. *Id.* Iowa does not take that approach.

of trespass to try title, and actions to quiet title.

50 C.J.S. *Judgments* § 1162, at 597–98 (2021) (footnotes omitted). In Iowa, a quiet-title action may not be joined with an FED action. *See* Iowa Code § 648.19(1); Restatement (Second) of Judgments § 26(1)(c), at 233–34 (Am. L. Inst. 1982) (setting forth an exception to the rule against claim splitting when there were restrictions on the court's authority "to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief").

It is true that in Iowa, "title is a justiciable issue in a forcible entry and detainer action when the action has been originally commenced in district court." *Steele v. Northup*, 168 N.W.2d 785, 788 (Iowa 1969). But here, only one of the two voluntary dismissals involved a proceeding filed in district court, where title could have been adjudicated. And, in any event, the issue of title wasn't adjudicated.

We take note of *Lowery Investments Corp. v. Stephens Industries, Inc.*, 395 N.W.2d 850 (Iowa 1986). This was a dispute between a buyer and seller of commercial real estate under an installment contract. *Id.* at 850–51. The buyer failed to make certain payments, so the seller attempted to follow the statutory procedure to forfeit the buyer's interest. *Id.* at 851. To avoid the effects of the forfeiture, the buyer brought a declaratory judgment action. *Id.* Around the same time, the seller brought an FED against the buyer. *Id.* In the FED action, the parties entered into a settlement. *Id.* at 852. However, the buyer failed to perform

its end of the settlement. *Id.* This led to a hearing and a judgment being entered, granting the seller possession of the property. *Id.* The seller also subsequently lost its declaratory judgment case and appealed. *Id.* at 850.

In light of the judgment in the FED action, we held that the doctrine of "claim preclusion" barred the seller's separate declaratory judgment action. *Id.* at 852–53. But, critically, we did so on the basis that the validity of the forfeiture had already been litigated and resolved in the FED action. *Id.* at 853. As we put it,

> [T]he validity of the vendor corporation's action in forfeiting the interest of the vendee corporation under the contract was necessarily resolved adversely to the vendee corporation in the forcible entry action. The allegations of the petition in the forcible entry action make it clear that the vendor corporation's asserted right of possession was dependent upon the validity of the forefeiture under Iowa Code chapter 656.

*Id.* In that sense, *Lowery* appears to be more about issue preclusion than claim preclusion. We believe it should be recognized as such.

Here, the challenge to ACC's title relates to an alleged legal disability affording Rooney additional time to redeem the property. *See* Iowa Code § 447.7. Under the law, that claim must be asserted in a separate action or counterclaim. *Id.* Rooney did file a separate action. Although the parties agreed that whether Rooney suffered from a legal disability would be determined as part of the FED case, we have today held that the FED case should have been dismissed ab initio with prejudice. Therefore, the entire FED judgment must be vacated. Given that the legislature had directed that the title challenge based on disability and the action for possession be divided, the dismissal of the latter should not preclude

the issue of title from being tried in another non-FED proceeding. For example, ACC could bring a quiet-title action against Rooney. *See* Restatement (Second) of Judgments § 26(1)(d), at 234 (allowing claim splitting when "it is the sense of [a statutory] scheme that the plaintiff should be permitted to split his claim").

We also note that the alternative—i.e., foreclosing ACC from bringing a quiet-title action—would "fail[] to yield a coherent disposition of the controversy." *Id.* § 26(1)(f), at 234 (describing another exception to the rule against claim splitting). If claim preclusion barred a quiet-title action, one party would have a tax deed and would be the record titleholder to the property, another party would have possession, and the first party would be unable to sue the second party to break the deadlock. A comment to the Restatement (Second) of Judgments suggests there can be a "rare" instance "when the disposition of a claim and counterclaim in a prior action has left the parties with inconsistent interests in disputed property." *Id.* § 26 cmt. *i*, at 243. The Restatement then gives the illustration of "A" having sold property to "B," but "B" through a litigation error having had its action to obtain proper title dismissed with prejudice. *Id.* § 26 cmt. *i*, illust. 9, at 243–44. Under the illustration, "B" would still be able to sue to establish proper title. *Id.* In some respects, that illustration is analogous to the present case. Barring ACC from bringing a quiet-title action would leave this property "in an unstable and intolerable condition." *Id.* Accordingly, we hold that ACC is not barred from bringing a quiet-title action and pursuing the remedies available therein. *See also Kruckenberg v. Harvey*, 694 N.W.2d 879, 888–89 (Wis. 2005) (applying Restatement (Second) of Judgments § 26(1)(f) in determining that

a prior dismissal with prejudice did not bar a court from hearing an action to determine the boundary line between two properties).

**V. Conclusion.**

In light of our conclusion with regard to rule 1.943, we do not reach Rooney's other appellate arguments.

For the foregoing reasons, we reverse the judgment of the district court and remand the case for dismissal with prejudice.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**