# IN THE COURT OF APPEALS OF IOWA

No. 23-0494
Filed May 22, 2024


**SOUTH CONSTRUCTION AND INSULATION, LLC,**
     Plaintiff-Appellant,

**vs.**

**IOWA WORKFORCE DEVELOPMENT,**
     Defendant-Appellee.
_____


Appeal from the Iowa District Court for Bremer County, Rustin Davenport, Judge.


A limited liability company challenges the dismissal of its petition for judicial review. **AFFIRMED.**


Luke C. Jenson of Jenson Law Firm, PLC, Waterloo, for appellant.

Brenna Bird, Attorney General, and John R. Lundquist, Assistant Attorney General, for appellee.


Heard by Tabor, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

With little direction from our caselaw, when the only two members of a limited liability company (LLC) have equal shares of membership units but receive unequal shares of remuneration, is Iowa Workforce Development (IWD) able to consider the extra amount received by the one member wages? And is the amount of those wages equal to the excess that one member received above and beyond the remuneration of the other? Because we find that the answer to both of these questions is yes, we affirm.

**I. Background Facts and Prior Proceedings.**

Justin and Randa South are married and the only two members of South Construction and Insulation, LLC (South Construction), which performs construction, insulation, and weatherization services. Justin and Randa each own fifty percent of South Construction's membership units. In 2016 through 2020, Justin and Randa each received the following remuneration from the LLC:

| Year | Justin | Randa |
|------|--------|-------|
| 2016 | $30,700.00 | $0.00 |
| 2017 | $38,550.00 | $7,647.00 |
| 2018 | $50,000.00 | $17,500.00 |
| 2019 | $51,195.65 | $18,200.00 |
| 2020 | $103,195.65 | $38,850.00 |

Phrased differently, Justin received between 5.04 times (in 2017) and 2.66 times as much remuneration (in 2020) as Randa, despite their equal division of membership units.

In January 2022, IWD completed an unemployment insurance tax audit of South Construction focused on the status of three persons working for the company. Along with questions involving whether some persons working for the

company were employees or independent contractors, IWD requested information about remuneration payments made to the members of South Construction and the ownership interests of those members. South Construction reported "draws" made to Justin and Randa but did not report any wages paid. Based on the information provided by South Construction, IWD calculated what it considered reportable out-of-proportion remuneration for a period of the previous five years.[1]

| Year | Justin | Randa | Reportable Out-of-Proportion Remuneration |
|------|--------|-------|-------------------------------------------|
| 2016 | $30,700.00 | $0.00 | $30,700.00 |
| 2017 | $38,550.00 | $7,647.00 | $30,903.00 |
| 2018 | $50,000.00 | $17,500.00 | $32,500.00 |
| 2019 | $51,195.65 | $18,200.00 | $32,995.65 |
| 2020 | $103,195.65 | $38,850.00 | $64,345.65 |

To arrive at the remuneration it then characterized as wages, IWD subtracted Randa's remuneration from Justin's; determining the difference was not in proportion to his interest, thus making it reportable out-of-proportion remuneration or wages under the statute. Specifically, IWD found South Construction liable for unemployment insurance contributions beginning January 1, 2016, because it "paid sufficient wages in employment to qualify as a construction employer under Iowa law." It calculated the total amount of back unemployment taxes South Construction owed to be approximately $27,146.96 without consideration of interest and penalties because "LLC member wages were not reported to [IWD]."

South Construction challenged this characterization and the calculation. A contested case hearing was held before an administrative law judge (ALJ) in

---

[1] The court found that "[b]oth parties agree on the amounts of remuneration the Souths received," but we note in one place the record shows different numbers for Randa in the years 2016 and 2017. As the amounts are not contested on appeal, we ignore the differences.

June 2022. At the hearing, Justin agreed that IWD's numbers for his and Randa's remuneration each year were accurate and that he and Randa held equal membership interests in South Construction. However, he insisted that he was not an employee of the company,[2] but that he was paid because he was "seeking compensation from the earnings of [his] business." Noting he took "enough to live on to pay bills," he determined the amount of remuneration paid each year based on "the work, myself, day-to-day operations." He added that there was a "difference in what each of us [he and Randa] do, and they'll be a different draw for each of us then." At the same time, he explained that there was no agreement between him and Randa regarding the amount of remuneration. Randa stated that the remuneration paid was intended to be a "draw" and agreed that she and Justin do not have any agreement as to how much they each receive as remuneration. The ALJ affirmed the IWD audit finding that the payments to Justin in excess of those to Randa were wages, writing, "every year, Justin South has income in excess of the remuneration Randa South receives. That means South Construction remunerated Justin South in excess of that which would have been paid to him based solely on his membership interest." The ALJ then concluded that "[t]hat excess remuneration was for services performed by a member of an LLC. . . . [I]t must be treated as wages."

South Construction petitioned for judicial review in July. The district court dismissed the petition in February 2023, writing first that "[a] person can receive money from an LLC as a member, which is not compensation for services, and

---

[2] In Justin's testimony, he referred to the company as a partnership, but we do not carry forward his improper reference to the company's legal organizational status.

also receive money from an LLC as an employee, which is compensation for services." Then, the court found that "because [Justin] was always paid more than [Randa], the largest amount of remuneration to [Justin] that can be considered draws in any given year is 100% of the remuneration [Randa] received." In addition, it noted that the burden to prove that the money paid was for membership interest was placed on South Construction and South Construction did not meet that burden. Thus, it affirmed IWD's determination that the out-of-proportion remuneration was wages. Lastly, it accepted IWD's calculation of wages, rejecting South Construction's proposed alternative calculation as "divorced from the meaning of remuneration and . . . unworkable." South Construction appeals, alerting us there are no published appellate opinions to answer its questions.

## II. Standard of Review.

Judicial review of an agency decision is governed by Iowa Code section 17A.19 (2022). *See Hagen v. Serta/Nat'l Bedding Co., LLC*, 1 N.W.3d 1, 5 (Iowa 2024). We apply the standards in section 17A.19 and determine whether our application of them produces the same result as that reached by the district court. *Chavez v. MS Tech. LLC*, 972 N.W.2d 662, 666 (Iowa 2022). If we reach the same result, we affirm the judgment of the district court. *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 889 (Iowa 2014). However, "[we] must reverse agency action when any one of several enumerated circumstances [in section 17A.19(10)] exists and 'substantial rights of the person seeking judicial relief have been prejudiced' as a result." *Mosher v. Dep't of Inspections & Appeals*, 671 N.W.2d 501, 508 (Iowa 2003) (quoting Iowa Code § 17A.19(10)). "The burden of

demonstrating the required prejudice and the invalidity of agency action is on the party asserting invalidity." Iowa Code § 17A.19(8)(a).

## III. Analysis.

As a limited liability company,[3] South Construction challenges both IWD's (1) determination that the out-of-proportion remuneration was characterized as wages and (2) the method of calculation of the out-of-proportion amount.[4] It claims that IWD's decision regarding the classification as wages was based on an erroneously broad interpretation of section 96.1A(40)(b)(5) and is inconsistent with IWD's prior practice of applying the statute, so it is without justification for its application as employed here. *See id.* § 17A.19(10)(c), (h). South Construction also contends IWD took a position not required by law that will have a negative impact on the private rights affected that is "grossly disproportionate to the benefits accruing to the public interest from that action that it must necessarily be deemed to lack any foundation in rational agency policy." *See id.* § 17A.19(10)(k). As a final point, it claims that the decision and the method of calculation are "otherwise unreasonable, arbitrary, capricious, or an abuse of discretion." *See id.* § 17A.19(10)(n).

## A. Definition of Wages.

What are wages? South Construction contends that the out-of-proportion remuneration Justin received was not for services performed but instead was a membership draw, so it cannot be considered wages. Preliminarily we note that

---

[3] Neither party disputed South Construction's legal company structure.
[4] South Construction also makes an argument referencing sole proprietorship and partnership rules but these code sections have no bearing on the question at hand.

we do not have the benefit of South Construction's operating agreement (if one exists). *See id.* § 489.102(15) (providing that an operating agreement may be "oral, in a record, implied, or in any combination thereof"). But at oral argument before this court, South Construction confirmed it is a member-managed LLC. *See id.* § 489.407 (describing management differences involving an LLC). And under section 489.407(6)[5] where remuneration is mentioned, "[a] member [is not entitled] to remuneration for services performed for a member-managed limited liability company, except for reasonable compensation for services rendered in winding up the activities of the company." There is no record of "winding up" activity over the years LLC funds were distributed here. So, it might seem that Justin was not entitled to remuneration for services performed, or in other words a wage, but this code section applies only to payments for management services, which are not allowed in a member-managed LLC. *See also* 5 Matthew G. Doré, *Iowa Practice Series: Business Organizations* § 13:18 (West Nov. 2023 Update) ("Members are not entitled to remuneration for management services in a member-managed company except for 'reasonable compensation for services rendered in winding up the activities of the company.'" (quoting Iowa Code § 489.407(8), formerly § 489.407(6)).

Going deeper, Iowa Code chapter 489 governs other operations of an LLC. The word "draw" does not appear in that chapter, but the word "distribution" does. At the time this case was heard by the ALJ, "[d]istribution . . . mean[t] a transfer of

---

[5] Effective January 1, 2024, several sections of chapter 489 were changed, but we rely on the 2022 Code, which was in effect at the time of the agency proceedings. Section 489.407(6) was renumbered to 489.407(8). The language remains substantially the same.

money or other property from a limited liability company to another person on account of a transferable interest."[6]  Iowa Code §489.102(5).  Still, chapter 489 limits what constitutes a distribution.  "Any distributions made by a limited liability company before its dissolution and winding up *must be in equal shares among members . . . .*"  Iowa Code § 489.404(1) (emphasis added).  As Professor Matthew Doré confirms that the Revised Uniform Limited Liability Company Act's "default rule is that any distributions made to members prior to dissolution shall be in equal shares."  Doré, § 13:26.  With these rules in mind, we turn to how chapter 96 applies.

Focusing only on the Iowa Employment Security Law (Iowa Code chapter 96), IWD responds that all of the remuneration Justin received could have qualified as wages, but it calculated only the amount of excess he received in its determination.  This wage question is a matter of statutory interpretation.  In interpreting a statute, we first look to the plain language of the statute to determine its meaning.  *Morrison-Knudsen Const. Co. v. Dir., Off. of Workers' Comp. Programs*, 461 U.S. 624, 630 (1983); *Borst Brothers Constr., Inc. v. Fin. of Am. Com., LLC*, 975 N.W.2d 690, 699 (Iowa 2022) ("We begin with the statute's text.").  "If the legislature chooses to define the term in a statute, that definition ordinarily binds us."  *State v. Mathias*, 936 N.W2d 222, 227 (Iowa 2019).  "If the statutory

---

[6] Section 489.102(5) is now also different under our current code.  Likewise, the definition of transferable interest is different but the version in effect at the time of the hearing was: "'Transferable interest' means the right, as initially owned by a person in the person's capacity as a member, to receive distributions from a limited liability company, whether or not the person remains a member or continues to own any part of the right."

language is plain and the meaning clear, we do not search for legislative intent beyond the express terms of the statute." *United Elec., Radio & Mach. Workers of Am. v. Iowa Pub. Emp. Rels. Bd.*, 928 N.W.2d 101, 109 (Iowa 2019) (citation committed).

So to start, we must define the term under dispute: "wages." And our legislature must have had some reason to define wages for an LLC under the statute involving Iowa's Employment Security Law. Under Iowa Code section 96.1A(40)(a), generally, "'[w]ages' means all remuneration for personal services, including commissions and bonuses and the cash value of all remuneration in any medium other than cash. The reasonable cash value of remuneration in any medium other than cash shall be estimated and determined in accordance with rules prescribed by the department." And specific to an LLC, "wages" do not include:

> [a]ny portion of the remuneration to a member of a limited liability company *based on a membership interest in the company provided that the remuneration is allocated among members, and among classes of members, in proportion to their respective investments in the company. If the amount of remuneration attributable to a membership interest cannot be determined, the entire amount of remuneration shall be deemed to be based on services performed*.

Iowa Code § 96.1A(40)(b)(5) (emphasis added); *see also* Iowa Admin. Code r. 871-23.3(2)(j) (defining what wages does not include). Under paragraph (40), IWD argues the clear meaning is that all of the remuneration received by a member of an LLC for personal services or services performed must be considered wages *unless* the amount of remuneration that is based on membership interest can be determined.

We agree with IWD, as we read this statutory language to mean that the legislature intended to allow an exception to the treatment of remuneration as wages only based upon the proportional membership interest of the LLC member but that if remuneration attributable to a membership interest cannot be determined, the payment will be deemed to be based on services performed or, in other words, be considered "wages." Here, the members each have a fifty percent interest in the LLC so Justin's remuneration should be calculated as equal to Randa's and with no legally acceptable explanation as to how the payments were different, there is no basis to do anything other than what IWD determined.

It was South Construction's burden to show the rationale for the payments. *See* Iowa Admin. Code r. 871-23.55(2) ("The burden of proof shall rest with an employing unit which employs any individual during any calendar year but which considers itself not an employer subject to the Act, to establish that it is not an employer subject to the Act . . . ."). And in the testimony before the ALJ, Justin's explanation for the difference between his and Randa's distribution depended on the work performed for the LLC and the amount of time spent doing the work, which sounded more like a payment for services performed rather than a distribution for a membership-based interest in the LLC. If Justin is going to be paid on the basis of services performed, it is not unfair to treat him as an employee of the LLC who is paid a wage.

We recognize the result may seem harsh to Jason and Randa and agree with the statement of IWD at oral argument that "we may question the fairness of the situation . . . for reasons that [Jason and Randa] may not have known" about the rule, but we do not find any ambiguity in this language as applied by the court.

A term in a statute is ambiguous "if reasonable minds could differ or be uncertain as to the meaning." *City of Waterloo v. Bainbridge*, 749 N.W.2d 245, 248 (Iowa 2008). However, "[w]hen the language of a statute is plain and its meaning is clear, the rules of statutory construction do not permit us to search for a meaning beyond the statute's express terms." *Id.* The definition in the statute is that wages shall include "the entire amount of remuneration" if not able to be determined. *See* Iowa Code § 96.1A(40)(b)(5). Reasonable minds cannot differ as to the meaning of "the entire amount"—the entire amount means all. We do not search for a different meaning outside of the statute.

Because we find that Iowa Code section 96.1A(40) is plain, unambiguous, and its meaning clear, we do not look any farther than its text for the meaning of wages. *See Mathias*, 936 N.W.2d at 227 ("When the language is 'plain, clear, and susceptible to only one meaning,' we do not search for meaning beyond the particular terms." (citation omitted)). Under the statute, all remuneration is wages unless proportional to a membership interest. Proportional means proportional to membership interest: "in proportion to their respective investments in the company." Iowa Code § 96.1A(40)(b)(5). Thus, Justin's remuneration based on his fifty-percent membership interest must be the same amount as Randa received and because her distribution was less; any additional paid would be out of proportion to the membership interest. Any excess "shall be deemed to be based on services performed," in other words, wages, and subject to unemployment insurance tax withholding.

If we were to accept South Construction's requested interpretation, then a company with equal membership interests could pay those members

disproportionately without paying unemployment insurance tax withholding for wages, in contradiction of the unambiguous statute. Because we find that IWD's classification of the out-of-proportion payments is not an erroneous interpretation of a provision of law, is not inconsistent with its prior practice or precedents[7], and is required by law, we affirm IWD's determination that the out-of-proportion remuneration is to be treated as wages.

**B. Calculation of Wages.**

In the alternative, South Construction asks that we change the calculation of wages from how much Justin received beyond what Randa received to how much he received over the average between the two of them (calculated by adding up the total remuneration, dividing that number by two, and then subtracting that number from Justin's remuneration). With this method, South Construction maintains the calculation more appropriately considers the proportionality of the distribution of payments—take the total distribution and break it into the ownership interests and then do the calculation. It urges that the calculation method used by IWD is "arbitrary, unreasonable and unsupported by statutory authority." South Construction proposes, specifically, this method of calculation:

| Year | Justin | Randa | Total Remuneration | Reportable Out-of-Proportion Remuneration for Justin |
|------|--------|-------|--------------------|------------------------------------------------------|
| 2016 | $30,700.00 | $0.00 | $30,700.00 | $15,350.00 |
| 2017 | $38,550.00 | $7,647.00 | $46,197.00 | $15,451.50 |
| 2018 | $50,000.00 | $17,500.00 | $67,500.00 | $16,250.00 |
| 2019 | $51,195.65 | $18,200.00 | $69,395.65 | $16,497.83 |
| 2020 | $103,195.65 | $38,850.00 | $142,045.65 | $32,172.83 |

---

[7] South Construction submitted IWD decisions in other cases, but we find none of them instructive on this issue with an LLC.

South Construction argues that the same calculation would apply to LLCs with more than two members. As an example, South Construction urges that the calculation involving an LLC with three members holding equal ownership who each receive $25,000, $50,000, and $75,000, respectively, should start by totaling the payments ($150,000), then divide by three and each non-wage remuneration should be $50,000 per member. In that calculation only the member receiving $75,000 would be required to report the overage of $25,000 as wages. But this calculation requires an upfront assumption that the total membership payout is excluded from the wage status, which conflicts with the statutory language that assumes the payments are wages at the onset. And where members are paid different amounts than the others, the payments are not in proportion to the membership interest, thus the statute comes into play. IWD responds, again, that all of the remuneration received could have qualified as wages, but it calculated only the amount Justin received over the sum received by Randa and such a calculation was reasonable and correct given that the remuneration must be proportional to each member's membership interest.

This second challenge is to IWD's exercise of its discretion. "We defer to the agency's views on those 'particular matters that have been vested by a provision of law in the discretion of the agency.'" *Dornath v. Emp. Appeal Bd.*, 988 N.W.2d 687, 689 (Iowa 2023) (quoting Iowa Code § 17A.19(11)(c)). "We . . . presume that the legislature intended a 'reasonable result.'" *Porter v. Harden*, 891 N.W.2d 420, 426 (Iowa 2017) (quoting Iowa Code § 4.4(3)). It only makes sense to look at the distributions on a year-by-year basis as that is exactly how wages are considered, rather than re-assigning the distributions to other members

retroactively as South Construction would have us do. IWD's calculation was not otherwise unreasonable, arbitrary, capricious, or an abuse of discretion, and we affirm.

**IV. Conclusion.**

Because the statute at issue here—Iowa Code section 96.1A—defines wages, we are bound by its definition. Its definition includes all remuneration received by a member of an LLC unless proportional to membership interest. Thus, IWD's determination that only the amount of remuneration Justin received beyond that of Randa was wages is a correct interpretation of a provision of law, not inconsistent with other precedent, and required by law. The calculation that IWD used to determine the amount of that remuneration that is wages was reasonable. We affirm the court's dismissal of South Construction's petition for judicial review.

**AFFIRMED.**